Margaret S. AMPOFO, Appellant,

v.

NATIONAL REHABILITATION HOSPITAL, Appellee.

No. 02–7088.

United States Court of Appeals, District of Columbia Circuit.

June 11, 2003.

210

Before GINSBURG, Chief Judge, and ROGERS and TATEL, Circuit Judges.

## JUDGMENT

PER CURIAM.

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs and oral argument of the parties. It is

ORDERED AND ADJUDGED that the judgment of the district court be affirmed for the reasons set forth in the accompanying memorandum.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R.APP. P. 41(b); D.C. CIR. RULE 41.

## MEMORANDUM

Margaret S. Ampofo, a Ghanaian-born black female nurse, appeals the district court's entry of judgment as a matter of law in favor of her former employer, the National Rehabilitation Hospital, on her claims of employment discrimination and retaliation for her having complained about the Hospital's discriminatory practices. *See* 42 U.S.C. § 2000e *et seq.* Because the district court correctly determined at the close of Ampofo's case that "there is no legally sufficient evidentiary basis for a reasonable jury" to find for Ampofo on either claim, FED. R. CIV. P. 50(a), we affirm.

On appeal, Ampofo contends that she presented sufficient evidence of race and national-origin discrimination to survive the Hospital's motion for judgment as a matter of law. As an adverse employment action, Ampofo identifies the Hospital's decision not to transfer her from night-shift supervisor to evening-shift supervisor, a position she contends entails substantially more responsibility. She argues that a "precipitous drop" in her performance evaluations under a new supervisor was evidence that the hospital's decision was based upon unlawful discrimination. The Hospital, however, provides a reasonable explanation for both actions: The "precipitous drop" in her evaluations was due to her supervisor's discovery of her abuse of hospital leave policies and other difficulties with her supervisors related to that abuse, and Ampofo did not receive the evening-supervisor position because other candidates were better qualified. Because Ampofo has offered insufficient evidence for a jury to conclude either that "a discriminatory reason more likely motivated the employer" or that "the employer's proffered explanation is unworthy of credence," *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the district court properly entered judgment as a matter of law in favor of the Hospital on Ampofo's discrimination claim.

Ampofo also contends that she presented sufficient evidence of retaliation for having engaged in statutorily protected activity, namely, complaining of discriminatory practices. Specifically, Ampofo alleges that the Hospital engaged in a course of retaliatory conduct that began with the

audit of Ampofo's attendance and use of leave time, included the drop in Ampofo's performance evaluations, and culminated in the Hospital's decisions not to appoint her as evening-shift supervisor and ultimately to fire her. There is, however, insufficient evidence that these actions were causally related to Ampofo's discrimination complaints. The evidence shows that Ampofo never complained of the Hospital's discriminatory practices before January 1996 or after February 1996. Ampofo's first complaint of discrimination was a comment she wrote in response to her 1995 evaluation, which was completed in January 1996, several months after the audit of her attendance. The evaluation marked the beginning of the "precipitous drop"; her response naturally also followed it in time. Neither the audit nor the drop could therefore have been caused by Ampofo's complaint. Moreover, the Hospital passed over Ampofo for the evening-shift supervisor position in October 1997, some twenty months after Ampofo's February 1996 complaint, and the Hospital fired Ampofo in July 1999, more than three years afterwards. These temporal gaps demonstrate that these adverse actions were also unrelated to Ampofo's 1996 complaints. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' Action taken (as here) 20 months later suggests, by itself, no causality at all.") (citations omitted). Though the causation question would indeed be closer if, as Ampofo claims, Hospital officials also knew of an administrative discrimination complaint she claims to have filed in July 1997–less than three months before the Hospital chose a new evening-shift supervisor–there appears to be no evidence of the July 1997 complaint in the record. When asked about this claim at oral argument, Ampofo's counsel agreed to submit record citations supporting his claim that Ampofo testified about this complaint, but has since notified the court that he "was not able to locate testimony on that precise point."